# Nicholls *versus* Johnston.

Under the 38th section of the act of 15th April, 1835, relating to Inspections, and the 2d section of the supplement thereto, of 31st March, 1836, a *miller* is required to have his brand-mark entered with the clerk of the Quarter Sessions only when the flour barrelled is intended for exportation *out of* the State, *except* by the Delaware or Susquehanna, or their branches; when shipped by either of those streams or their branches, to a market out of the State, *but within the United States*, the brand-mark need not be entered: and the question of intention is for the jury.

ERROR to the Common Pleas of *Westmoreland county.*

This was a *qui tam* action, brought by Nicholls *vs.* Johnston, to recover the penalty, under the act of Assembly, for not filing his brand with the clerk of the Court of Quarter Sessions; defendant being the owner of a small mill in the county of Westmoreland. He made flour there for about twelve years past; the mill runs about three months in the year. He ground the wheat of the neighbors, and barrelled and branded it for them. Formerly, all barrels containing the flour were branded superfine, but *the inspectors objected to it.*

The 38th section of the act of 15th April, 1835, entitled, "An

[Nicholls *v.* Johnston.]

Act relating to Inspections," is as follows:—"Every miller and bolter of flour for exportation shall cause his brand-mark, as aforesaid, to be entered with the clerk of the Court of Quarter Sessions of the county where he resides, together with his name and place of residence, under the penalty of five dollars for every month during which he shall have exercised his said employment without having made such entry."

The 2d section of the supplement, of 31st March, 1836, *Dunlop* 706, provides, "Nothing in the act to which this is a supplement, shall be so construed as to require the inspection, proving, or branding of flour or meal, of any kind, shipped or laden on the waters of the Susquehanna and Delaware, and their branches, and intended to be transported by the waters of said rivers, to a market out of this State, but within the limits of the United States."

KNOX, J., charged, *inter alia,* that, "in order to bring one within the provisions of the section first above quoted, it is necessary to show that the flour manufactured at his mill was intended, either by himself or others, for exportation out of the State; and that, knowing such to be the fact, he neglected to file his brand with the clerk of the sessions." But he further charged, that "there is no evidence in the case before us, that the defendant ever manufactured a barrel of flour which was intended for exportation, or which was ever actually exported, or sold out of this State; and we, therefore, instruct the jury that the case is not made out, and the verdict must be for the defendant."

It was assigned for error, that the court erred in their construction of the 38th section of the act of 15th April, 1735; and by directing the jury that that they must find for the defendant.

The case was argued by *Cowan,* for plaintiff in error.—He contended, that where flour is actually branded, the miller is liable for the penalty, if he does not cause his brand-mark to be entered.

*Foster,* for defendant in error.

The opinion of the court was delivered by

COULTER, J.—The different laws on the subject of the inspection of flour are somewhat confused, and the penalties ill-defined in their application. By the 2d section of the act of 31st March, 1836, being a supplement to the act of 1835, it is provided, that nothing in the act to which this is a supplement, shall be so construed as to require the inspection or branding of flour or meal of any kind, shipped or laden on the waters of the Susquehanna and Delaware and their branches, and intended to be transported by their waters to a market out of the State, but within the limits of the United States. By the act of 6th April, 1841, entitled "An

[Nicholls *v.* Johnston.]

Act to incorporate a company to erect a bridge over Lackawaxen, near Paupack Eddy," it is provided, that a painted device may be substituted by bolters or millers, for the brand in the act of 1835, and that a description of the device shall be filed by every bolter or miller of flour for exportation, with the clerk of the Court of Quarter Sessions of the county, in the same manner as description of the brands are required to be filed. In various sections, throughout the act of 1835, flour intended for exportation, and the branding of it, is spoken of as contradistinguished from other sections, where the flour is intended to be used, as well as inspected, in the State. The mark of No. 1, and 2, is required to be put on barrels, according to the weight, without specifying whether that is intended to be exported or not. The section under which the penalty in this case is claimed, expressly states that the flour must be intended for exportation. This, taken in connection with the phraseology of the first section of this act, of the 5th section, and the 20th section, and also of the 2d section of the act of 31 March, 1836, satisfies me fully that the penalty in the 38th section of the act of 1835, for which this suit is brought, attaches only where the flour, barrelled and put up, was intended for exportation out of the State. Taking the whole act together, the clear intent of the legislature was to establish the reputation of Pennsylvania brands in foreign markets; because the act of 1836, removing the penalty from flour shipped on the Delaware and Susquehanna and their branches, to places within the United States, virtually, and almost entirely obliterated the penalty, except as to foreign shipments; there being little flour shipped down the Ohio since 1836. But, although the flour barrelled and put up by bolters and millers must be intended for exportation to draw and attach the penalty for not filing a description of the brand or device with the clerk of the Quarter Sessions to such omission, yet, still the question is, What is evidence of that intention? And that is the real question in this cause. The court here withdrew that question from the jury, and decided it on the evidence peremptorily against the plaintiff. Now, undoubtedly, there was some evidence proper to be submitted to the jury on that head. I say not that it was sufficient or conclusive; that is for a jury. Although it was a small mill, and ran only three months in the year, yet flour was barrelled at it every year, and branded with the name of the defendant's father, and marked No. 1, and 2, as the case might be, and superfine or fine. This was sent abroad, into the markets of the country. It might be exported, or it might not. It appears that the miller knew the flour was inspected somewhere; for he speaks of the inspectors finding fault with the mode in which it was branded, which was afterwards corrected. We think the evidence ought to have been submitted to the jury. The defendant will be at liberty to give any evidence on the sub-

[Nicholls *v.* Johnston.]

ject; and, from the whole, the jury will determine the fact, whether the flour, manufactured and put up, was intended to be exported, so as to bring the defendant within the penalty, or not. It would seem, that if it was a neighborhood mill, used and conducted for neighborhood purposes, and the flour put up in barrels was intended to be used within the State, or to be transported out of the State, to parts within the United States, by means of the Delaware or Susquehanna, or their waters, that the penalty ought not to attach. The action being for a penalty, the rule of evidence, in such cases, is, that the proof ought to be plain and satisfactory, in order to inflict it.

Judgment reversed and a *venire de novo* awarded.